THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUSSELL WEATHERS, Defendant-Appellant.

(No. 72-14;

Third District—June 14, 1973.

ALLOY, P. J., dissenting.

James Geis, of Defender Project, of Ottawa, for appellant.

James N. DeWulf, State's Attorney, of Rock Island, (William Schick, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Following consecutive bench trials in the circuit court of Rock Island County, defendant Russell Weathers was found guilty under three separate indictments charging the unlawful sale of narcotic drugs. He

was sentenced to the penitentiary for a term of 7 to 20 years on each charge, with sentences to run concurrently. Defendant contends in this appeal that the trial court failed in each case to compel the identity of the informer to be disclosed and that this caused him to be deprived of due process and of his right to be confronted with the witnesses against him.

In each case a police officer testified to a sale of narcotics by defendant to the police officer and there was an express denial by defendant that such sale was made. The credibility of the opposing witnesses was, therefore, an issue. In one of the indictments, Daniel Pavichevich, an agent for the Narcotics Division of the Illinois Bureau of Investigation and the defendant were the chief witnesses. Pavichevich testified that around 6:00 P.M. on February 8, 1971, he and a fellow agent, David Erdman, met in a motel room with a "Joe McDonald" to plan a purchase of heroin from defendant. McDonald was acquainted with the defendant but the agents were not. An hour later, Pavichevich stated, he and McDonald drove to defendant's residence, and after he had been introduced to defendant by McDonald, both men made purchases of heroin from defendant. On cross-examination, the agent Pavichevich stated that he knew Joe McDonald by another name, but that he had chosen to use the name Joe McDonald for this operation. As partial corroboration, Erdman testified that he had observed Pavichevich and McDonald enter and leave the residence premises at the time and date in question. Defendant appeared as a witness on his own behalf and denied having sold the heroin to the agent or anyone else on February 8, 1971, and also denied that the agent had ever been in his home.

Under a second indictment, the agent Pavichevich was again the principal witness for the prosecution. He testified that he and McDonald returned to defendant's residence on May 7, 1971, at about 1:45 P.M., at which time McDonald asked defendant if he had any cocaine for sale. Defendant, according to the agent, said that he did and that the cost would be $125 for "half a spoon". Defendant then stated (according to the agent) that defendant would be required to go after the drug and would need the money in advance, and that the two men should return later in the day. The agent further testified that he gave defendant $125 and that when he and McDonald returned later, they were told by a girl who answered the door that they were to wait in their car in front of the residence. After they waited about an hour, defendant drove up in a green Ford automobile, pulled alongside the agent's car, rolled down the window of the Ford, and threw a tinfoil packet into the agent's car. The agent testified that he opened the packet and found it to con-

tain a white powder. The agent also testified that the defendant parked his car and then came back to the agent's car and engaged in a conversation with McDonald and the witness, after which the agent drove away. On cross-examination, the agent stated that this meeting with defendant had "evidently" been arranged by McDonald.

Agent Erdman also testified in the second case. He maintained a surveillance and stated that he saw Pavichevich and McDonald waiting in their vehicle in front of the residence on the date in question; that he saw a green Ford pull up and stop beside the waiting vehicle but he could not see what was occurring, although he did see the driver of the green car park it and then return to have a conversation with agent Pavichevich and McDonald. Erdman stated that the driver of the green car was a Negro, but when asked, stated he did not see or recognize the man as being in the courtroom. In this case, also, defendant had denied that he sold cocaine in the manner or at the time prescribed by agent Pavichevich, and stated that he had never known the agent to have been in his house.

In the case involving a third indictment, a sale of narcotics was allegedly made on June 3, 1971, to Grover Webb, another agent of the Illinois Bureau of Investigation. According to Webb's testimony, he and a "special employee", identified only as a female, went to defendant's residence on that date to make a purchase of narcotics. Upon arriving at the home of defendant, Webb said, defendant and the special employee went into a bathroom and conversed for about five minutes, and that defendant thereafter sold agent Webb, two packets of heroin for $50. Upon cross-examination, Webb stated that he had never met defendant before this occasion, and that he had been introduced by the "special employee" after the "special employee" and defendant had finished their conversation in the bathroom. In partial corroboration of Webb, two City of Rock Island police officers testified that they had seen the agent and "another person" enter defendant's residence at the time and the date testified to by Webb. As in the other cases, defendant denied that he sold narcotics to Webb or a woman in his company, and stated that he had never seen the agent prior to trial.

Pretrial discovery motions were filed by the defendant seeking the disclosure of names and addresses of persons who had knowledge of the offenses, or who were present at their occurrence. These were denied. At the ensuing trial, on the basis of the "informer's privilege" invoked by the State, the trial court refused to permit defendant to elicit on cross-examination of the narcotics agents, the true identities of McDonald and the "special employee". It is now contended on appeal by de-

fendant that the court's refusal to require disclosure violated the concept of fundamental fairness inherent in the constitutional guarantee of due process of law, and that it also deprived defendant of his constitutional right to be confronted with the witnesses against him.

The precise issue was raised in *People v. Lewis, ante,* p. 762 wherein we concluded that, "under the circumstances the trial court committed prejudicial error in permitting the People to withhold the identity of its undercover employee in the face of the demands by the accused for her disclosure." We adopt that opinion herein.

The judgments of the Circuit Court of Rock Island County are reversed and the causes remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

STOUDER, J., concurs.

Mr. PRESIDING JUSTICE ALLOY dissenting:

I believe that the decision of the trial court refusing to require disclosure of the identity of the informer was proper and should be upheld. The issue before us was considered extensively in the case of *People v. Lewis, ante,* p. 762, I filed a dissenting opinion in such case which expresses in some detail the views which should be applied in the instant case. I renew my dissent as expressed in the *Lewis* case as a dissent in this case.